IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALLIE ELLIN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| EMPIRE TODAY, LLC, et al., | : | NO. 11-2312 |
| Defendants. | : | |

## MEMORANDUM ON MOTION TO COMPEL ARBITRATION

**Baylson, J.**                                                                                                          **August 24, 2011**

### I.  Introduction

Plaintiff Sallie Ellin, who entered into a contract with Defendant Empire Today, LLC ("Empire Today") for the purchase and installation of carpet, filed suit against Empire Today and three subcontractors for personal injuries Plaintiff sustained during the installation of carpet. Presently before the Court is the Motion of Defendants, Carpet Workshop Pennsylvania, LLC ("Carpet Workshop") and Empire Today (collectively, "Defendants"), to Compel Arbitration, brought pursuant to the arbitration clause in the carpet sale contract. On August 18, 2011, the Court entered an Order granting in part and denying in part Defendants' Motion. (Order, ECF No. 30.) This Memorandum will state the reasons.

### II.  Factual and Procedural Background

On June 1, 2010, Plaintiff entered into a contract with Empire Today for the purchase and installation of carpet. (Mot. to Compel, ECF No. 20.) The Carpet Purchase Order ("Purchase Contract") contains an arbitration clause on the second page, entitled "Arbitration of Disputes."

(Id.) The Arbitration Clause requires that "any and all disputes, claims or controversies . . . arising under or relating to this Agreement . . . including by way of example and not as a limitation: (i) the relationships resulting from this Agreement and the transactions arising as result thereof; [and] (ii) the terms of this Agreement . . . shall be subject to binding arbitration." (Id. Ex. A.)

Plaintiff alleges that Empire Today subcontracted the installation of carpet to Defendant Carpet Workshop, which then again subcontracted the installation work to Defendant LLB Flooring Inc. ("LLB Flooring"). (Am. Compl., ECF No. ¶¶ 18, 19, 20, 25.) The subcontract between Carpet Workshop and LLB Flooring contains a similar arbitration provision. (Mot. to Compel, Ex. B ¶ 36.) Plaintiff alleges that LLB Flooring then hired Defendant Lucero's Flooring, LLC ("Lucero's Flooring") to perform the installation work. (Id. ¶ 25.) Plaintiff alleges that on June 10, 2010, Defendants were installing carpet when an installer negligently moved a piece of furniture and struck and injured Plaintiff. (Id. ¶¶ 13, 14.)

On April 1, 2011, Plaintiff filed a Complaint in this Court to recover damages for personal injuries against Empire Today, Carpet Workshop, LLB Flooring, and Lucero's Flooring. (Compl., ECF No. 1.) Plaintiff first claimed Defendants were negligent in moving furniture which caused her injuries. (Am. Compl. ¶ 14.) Plaintiff further claimed that Empire Today was negligent in hiring and/or supervising its subcontractors. (Id. ¶ 20.) Plaintiff claimed that Defendants were negligent in not insuring that LLB Flooring properly supervised Lucero's Flooring. (Id. ¶ 27.) Finally, Plaintiff alleged that Defendants failed to confirm that Lucero's Flooring is properly bonded and insured. (Id. ¶ 28.)

On July 1, 2011, Empire Today and Carpet Workshop filed the pending Motion to

Compel Arbitration, requesting this Court compel Plaintiff to arbitrate her claims against them in accordance with the terms of the Arbitration Clause. (Mot. to Compel.) Plaintiff filed her Opposition on July 12, 2011. (Opp'n, ECF No. 22.)

### III. Parties' Contentions

#### A. Defendants

Empire Today and Carpet Workshop argue that the language of the arbitration provision is clear and unambiguous, indicating the parties' intention to resort to arbitration. Defendants further argue that the incident that occurred during the installation of the carpet either arises under or relates to the Purchase Contract because the sale and installation of the carpet was the subject of the contract. Thus, Plaintiff's claims fall within the scope of the Arbitration Clause. Defendants also argue that the above conclusions are further supported by both Pennsylvania and federal policies favoring arbitration.

#### B. Plaintiff

Plaintiff first argues that her tort claims are not subject to the Arbitration Clause contained in the Purchase Contract. Plaintiff argues that the restrictive phrase "under or relating to this Agreement" suggests that the Arbitration Clause only governs the terms and conditions of the sale and installation of carpet and does not contemplate her personal injury claims. Plaintiff further argues that if the parties intended the Arbitration Clause to include personal injury claims, they only needed to reference them by name. She then contends that Carpet Workshop is not a party to the Purchase Contract and, therefore, cannot invoke the Arbitration Clause and bind her to arbitrate any of her claims against it. Finally, Plaintiff argues that the Arbitration Clause is unconscionable because the Purchase Contract constitutes a contract of adhesion, the Arbitration

Clause was never provided nor explained to her, and the Arbitration Clause is one-sided.

## IV.   Jurisdiction and Standard of Review

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment. Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009). The party opposing arbitration is given "the benefit of all reasonable doubts and inferences that may arise." Id. (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980)).

## V.   Discussion

### A.   Legal Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-10, requires federal courts to enforce written agreements to arbitrate disputes. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The FAA applies to any arbitration agreement within the coverage of the Act, even in cases in which the district court's jurisdiction is based on diversity of citizenship. Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 54 (3d Cir. 2001). The FAA is applicable to arbitration agreements that are (1) in writing and (2) part of any "contract evidencing a transaction involving commerce." 9 U.S.C § 2. The term "commerce" is defined to include "commerce among the several States." Id. § 1. Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within

the scope of that agreement. Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009).

Although the FAA endorses the federal policy favoring arbitration, a court cannot direct parties to arbitration unless there is a valid agreement to arbitrate. Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 264 (3d Cir. 2003). Section 2 of the FAA provides that an arbitration agreement shall be valid "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that courts may apply "generally applicable [state-law] contract defenses, such as fraud, duress, or unconscionability" to invalidate arbitration agreements. AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1746 (2011) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

Once a court has found that there is a valid agreement to arbitrate under state law, federal law governs the determination of whether a particular dispute falls within the scope of the arbitration agreement. Century Indem., 584 F.3d at 524.

**B.   Analysis**

    **1.   Choice of Law**

In the present case, Plaintiff argues that the Arbitration Clause is unconscionable. The Court will apply general state contract law regarding unconscionability to determine the validity of the Arbitration Clause.

A federal court sitting in diversity must apply the substantive law of the state in which the court sits, including its choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Here, that state is Pennsylvania. Pennsylvania courts generally apply the law of the state agreed upon by the contracting parties. Miller v. Allstate Ins. Co., 763 A.2d 401, 403 (Pa.

Super. Ct. 2000). The Third Circuit has recognized this principle, stating that "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007). However, the Pennsylvania Supreme Court has recognized an exception that "choice-of-law agreements can be avoided when the terms offend Commonwealth public policy even in disputes between contracting parties." Pa. Dep't of Banking v. NCAS of Del., LLC, 948 A.2d 752, 759 n.9 (Pa. 2008). This exception is embodied in Ssection 187 of the Restatement (Second) of Conflict of Laws, which Pennsylvania courts have adopted. See, e.g., Chestnut v. Pediatric Homecare of Am., Inc., 617 A.2d 347, 350-351 (Pa. Super. Ct. 1992) (applying Section 187). Section 187 provides that the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

The Purchase Contract contains a choice-of-law provision, which provides, "This agreement is to be governed by the laws of the State in which it is performed, except as may be preempted by federal law." (Mot. to Compel Ex. A.) Defendants argue that the installation of carpet took place in Pennsylvania; therefore, Pennsylvania law governs the Contract. Although Plaintiff did not explicitly state that Pennsylvania law applies to the question of whether there is a valid arbitration agreement, Plaintiff seems to agree that Pennsylvania law applies because she primarily relies on Pennsylvania cases to oppose the Motion.

Considering Pennsylvania is where the installation was performed and where Plaintiff resides, the Court concludes there is a substantial relationship between the state of choice and the transaction. Neither party disputes the application of Pennsylvania law and the only state law cited by each party is Pennsylvania law. Therefore, the Court will apply Pennsylvania law in determining whether there is a valid arbitration agreement.

### 2.     Carpet Workshop Cannot Invoke the Arbitration Clause

Plaintiff argues that Carpet Workshop cannot invoke the Arbitration Clause because it is not a party to the Purchase Contract and she did not agree to arbitrate any of her claims against Carpet Workshop. The Court agrees with Plaintiff.

The FAA intends to "place arbitration agreements upon the same footing as other contracts." Gilmer, 500 U.S. at 24. A non-signatory cannot be bound to arbitrate unless it is bound "under traditional principles of contract and agency law" as a signatory of the arbitration agreement. Bel-Ray Co. v. Chemrite Ltd., 181 F.3d 435, 444 (3d Cir. 1999). An "intended third-party beneficiary" of a particular agreement may be bound by that agreement's arbitration clause or may seek to compel arbitration under the terms of the agreement. E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 195 (3d Cir. 2001). Under Pennsylvania law, a party is an intended third-party beneficiary "only where both parties to the contract express an intention to benefit the third party in the contract itself." Scarpitti v. Weborg, 609 A.2d 147, 150 (Pa. 1992).

Carpet Workshop is not a signatory party to the Purchase Contract and is not referenced by signatory parties to be a third-party beneficiary. While the Purchase Contract contains a provision that "[s]ales and installation of products are provided by qualified and experienced

independent contractors" (Mot. to Compel Ex. A), neither Empire Today nor Carpet Workshop claims that Carpet Workshop serves as an independent contractor for the sale and installation of carpet, or that this provision renders Carpet Workshop a third-party beneficiary (see Mot. to Compel). Defendants only allege that Carpet Workshop is wholly-owned by Empire Today (id.), which carries no legal significance on this issue. Further, the Arbitration Clause identifies the parties subject to its provisions as "Contractor" and "Buyer(s)," but the Purchase Contract identifies Plaintiff as "Buyer(s)" and does not define "Contractor." (Id. Ex. A.) Viewing the Purchase Contract as a whole, nothing suggests that Plaintiff and Empire Today intended Carpet Workshop to be bound by or able to invoke the Arbitration Clause. This interpretation is further supported by the fact that there is no signature required from any Carpet Workshop representative to consummate the Purchase Contract. Neither exception to the third-party beneficiary rule in Scarpitti suggests a different result. See Scarpitti, 609 A.2d at 150-51.

Therefore, the Court concludes that Carpet Workshop cannot invoke the Arbitration Clause. For similar reasons, Plaintiff is not bound by the agreement to arbitrate between Carpet Workshop and LLB Flooring. See Paukovitz v. Imperial Homes, 649 N.E.2d 473, 475 (Ill. App. Ct. 1995) (stating that, under Illinois law, an alleged third-party beneficiary "must be expressly named in the contract"); (see also Mot. to Compel Ex. B ¶ 30 (selecting Illinois law to govern contract between Carpet Workshop and LLB Flooring)).

### 3. Unconscionability

The doctrine of unconscionability has been applied in Pennsylvania as a defense to the enforcement of an allegedly unfair contract or contractual provision. Salley v. Option One Mortg. Corp., 925 A.2d 115, 119 (Pa. 2007). In evaluating claims of unconscionability, courts

generally recognize two categories, procedural unconscionability and substantive unconscionability. Ferguson v. Lakeland Mut. Ins. Co., 596 A.2d 883, 885 (Pa. Super. Ct. 1991). The Pennsylvania Supreme Court confirmed that the party challenging an arbitration agreement has the burden to demonstrate that the agreement is both procedurally and substantively unconscionable. Salley, 925 A.2d at 119-20.

### a.     Procedural Unconscionability

The Pennsylvania Supreme Court defines procedural unconscionability to mean the "absence of meaningful choice on the part of one of the parties" regarding the acceptance of the provisions. Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (Pa. 1981). Procedural unconscionability is generally found where the agreement is a contract of adhesion. Alexander, 341 F.3d at 265. A contract of adhesion is one prepared by a party with excessive bargaining power and presented to the other party on a "take or leave it" basis. Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 276 (3d Cir. 2004). However, a contract of adhesion is not necessarily unenforceable; the party challenging it must also establish substantive unconscionability. See Salley, 925 A.2d 119-20.

Plaintiff argues that the Purchase Contract is a contract of adhesion, prepared by Empire Today and signed by Plaintiff as a consumer who had little choice about the terms. Unless the Arbitration Clause is also substantively unconscionable, the Court need not determine whether it is procedurally unconscionable.

### b.     Substantive Unconscionability

Substantive unconscionability is found where the contractual terms "unreasonably favor" the party with the greater bargaining power. Witmer, 434 A.2d at 1228. Pointing to the

contractual provision that "Contractor retains the option to use judicial or non-judicial relief to enforce the monetary obligation represented by this Agreement," Plaintiff seems to argue that reserving judicial remedies solely to Empire Today, in and of itself, renders the arbitration agreement presumptively unconscionable. (Opp'n.)

The Pennsylvania Supreme Court, however, rejected such a presumption. See Salley, 925 A.2d at 129. In Salley, the Pennsylvania Supreme Court held that the reservation of foreclosure remedies, as a matter of law, does not render the arbitration agreement substantively unconscionable. Id. at 128. The Court recognized that "parties who agree to arbitrate some claims may exclude others from the scope of the arbitration agreement." Id.

In Ostroff v. Alterra Healthcare Corp., the arbitration clause in a residency agreement required the plaintiff to arbitrate all agreement-related claims, but reserved the right for the defendant to bring an action for eviction in court. 433 F. Supp. 2d 538, 547 (E.D. Pa. 2006). Judge DuBois acknowledged that the mere allegation of such a reservation alone does not render the arbitration clause unconscionable. Id. However, Judge DuBois went on to note that the arbitration provision also severely limited discovery, and he held that these two features together unreasonably favored the defendant over the plaintiff because they prohibited the plaintiff from fully presenting her claims. Id.

In the instant case, Plaintiff has not shown that she will similarly be denied a fair opportunity to present her claims in arbitration while Empire Today can still take advantage of the judicial forum. Further, Plaintiff fails to demonstrate that Empire Today's reservation is so unreasonably favorable to Empire Today that it makes the Arbitration Clause substantively unconscionable. Because Plaintiff cannot show it is substantively unconscionable, the

Arbitration Clause is valid and enforceable by Empire Today.

### 4. Scope of the Arbitration Clause

In determining the scope of an arbitration agreement, the Court should keep in mind federal policy favors arbitration. Medtronic AVE, 247 F.3d at 55. There is also a "presumption of arbitrability" when the arbitration provision is broadly crafted. Century Indem., 584 F.3d at 524 (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)). An order to arbitrate a particular dispute "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. However, "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." Medtronic AVE, 247 F.3d at 55. To determine whether a claim falls within the scope of an arbitration agreement, courts should focus on "the factual underpinnings of the claim rather than the legal theory alleged in the complaint." Id. In the light of the presumption of arbitrability under the FAA, the Court concludes that Plaintiff's personal injury claims fall within the scope of the Arbitration Clause.

To escape the presumption of arbitrability, Plaintiff argues that the inclusion of the limiting phrase "arising under or relating to this Agreement" supports a narrower reading of the Clause. However, this position is inconsistent with Third Circuit precedent. See Century Indem., 584 F.3d at 556 (holding that arbitration clause that provides for arbitration of "any dispute . . . with reference to the interpretation of this Agreement or [the parties'] rights with respect to any transaction involved" is broad and that the presumption of arbitrability applies). In this case, the Arbitration Clause, which does not contain restrictive language, is broad on its face, governing "any and all disputes, claims or controversies . . . arising under or relating to this

Agreement." (Mot. to Compel Ex. A.)

Relying on <u>Hazelton Area School District v. Bosak</u>, Plaintiff argues that tort claims are not subject to an arbitration agreement unless specifically referenced in the agreement. 671 A.2d 277, 282 (Pa. Commw. Ct. 1996). Plaintiff's argument fails for two reasons. First, federal law controls here and, under federal law, Plaintiff's position is contrary to the presumption of arbitrability under the FAA. <u>Century Indem.</u>, 584 F.3d at 524. A broadly crafted arbitration provision covers separate tort claims that are inextricably intertwined with breach of contract claims. See <u>U.S. Claims, Inc. v. Saffren & Weinberg, LLP</u>, No. 07-0543, 2007 WL 4225536, at *7 (E.D. Pa. Nov. 29, 2007) (holding that conversion and intentional interference claims are subject to an arbitration agreement that provides arbitration for "any dispute . . . arising out of or relating to this Agreement"). As such, tort claims need not be specifically referenced to be subject to an arbitration agreement.

Second, Pennsylvania law leads the Court to the same conclusion. See <u>Smay v. E.R. Stuebner, Inc.</u>, 864 A.2d 1266, 1275-76 (Pa. Super. Ct. 2004) (declining to follow the <u>Hazelton</u> holding and ruling that similar language in an arbitration provision applies to tort-based claims); <u>Pittsburgh Logistics Sys., Inc. v. Prof'l Transp. & Logistics, Inc.</u>, 803 A.2d 776, 781-82 (Pa. Super. Ct. 2002) (holding tort claims which implicate contractual obligations are subject to unrestricted arbitration provision).

Further, Plaintiff has failed to rebut the presumption of arbitrability. To determine whether Plaintiff's personal injury claims fall within the arbitration agreement, the Court should focus on the "factual underpinnings of the claim." <u>Medtronic AVE</u>, 247 F.3d at 55. The heart of Plaintiff's claims is that Empire Today's installer was negligent in the installation of the carpet

and that Empire Today should be responsible for its installer's negligence. Although Plaintiff's personal injury claims sound in tort, they are closely related to the Purchase Contract.

Claims "arising under or relating to" the Purchase Contract are subject to the Arbitration Clause. (Mot. to Compel Ex. A.) Empire Today has an obligation to install carpet under the Purchase Contract. The Contract contemplates that carpet installers would move heavy furniture. Plaintiff suffered injury because an installer allegedly harmed her while moving furniture. Thus, the dispute between Plaintiff and Empire Today clearly results from the Purchase Contract. Moreover, the exculpatory provision in the Purchase Contract even contemplates this dispute, providing that "Empire [Today] is not responsible for . . . damage caused by the moving of heavy furniture." (Id.) The Purchase Contract even purports to define the standard of care Empire Today owes Plaintiff, i.e. to "perform all work in a professional manner and in keeping with industry standards." (Id.) Therefore, Plaintiff's negligence claims also implicate Empire Today's contractual obligations.

Nothing in the Arbitration Clause suggests with "positive assurance that the arbitration is not susceptible of an interpretation" that personal injury claims "aris[e] under or relat[e] to" the Purchase Contract. See Century Indem., 584 F.3d at 524. Therefore, Plaintiff's personal injury claims against Empire Today fall within the scope of the Arbitration Clause.

## VI.  Conclusion

For the foregoing reasons, the Court concluded that Carpet Workshop cannot invoke the Arbitration Clause, that the Arbitration Clause is valid and enforceable, and that Plaintiff's claims against Empire Today are subject to arbitration. Accordingly, the Court granted the Motion with respect to Empire Today's request to compel arbitration, and denied the Motion with respect to

Carpet Workshop. The Court also suspended the remainder of the proceedings in the case pending completion of the arbitration between Plaintiff and Empire Today. An appropriate Order was previously entered.

BY THE COURT:

/s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

O:\Todd\11-2312 Ellin v. Empire Today\Ellin - Memo re Mot to Compel Arb - FINAL.wpd